STATE OF CONNECTICUT *v.* JOHN
FITZGERALD WIDEMAN
(13207)

FOTI, HEIMAN and HENNESSY, Js.

Argued April 17—decision released August 1, 1995

*Barry A. Butler,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John Benedict,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered by the court, following his guilty plea[1] entered pursuant to the *Alford* doctrine,[2] of attempted robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (2).[3] The defendant's motion to withdraw his plea of guilty was denied by the court.[4] The dispositive issue on appeal is whether the trial court improperly failed to apprise the defendant of an essential element of the offense during the plea canvass and before accepting the plea of guilty, or failed to ensure that the defendant fully understood the nature of the crime of attempted rob-

[1] During jury selection, a plea agreement was fashioned and, on November 5, 1993, the defendant pleaded guilty to a substitute information alleging one count of attempted robbery in the first degree. He had been charged with two counts of capital felony murder in violation of General Statutes § 53a-54b (8), two counts of murder in violation of General Statutes § 53a-54c and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134.

[2] *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Under this doctrine, the defendant pleads guilty and acknowledges that the state has enough evidence to convict him without expressly acknowledging his participation in the criminal activity.

[3] General Statutes § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of the immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

General Statutes § 53a-133 provides in pertinent part: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person . . . ."

[4] The defendant's motion to withdraw his plea was made "pursuant to the fifth and fourteenth amendments to the constitution of the United States; article one, section eight of the constitution of the state of Connecticut; Connecticut Practice Book § 721 et seq.; and Connecticut General Statutes sec. 54-1."

bery in the first degree. We affirm the judgment of the trial court.

The record discloses the following pertinent facts, as recited by the state's attorney in court and in the presence of the defendant prior to his plea. An associate of the defendant, Eric Amato, had been storing a quantity of cocaine at an apartment in West Haven. The residents of that apartment were Hope Vaughn and Joanne Bailey. On October 18, 1990, Vaughn stole the cocaine and took it to the apartment of Anthony Young. When Amato discovered that the drugs were missing, he and another person went to Bridgeport where they met Bailey. She denied any knowledge of the theft. Amato and the others were later joined by the defendant. They returned to West Haven that evening, where they encountered Vaughn. Their attempts to coerce Vaughn into divulging the whereabouts of the drugs were unsuccessful.

The following morning, Amato and Bailey spoke to neighbors in the West Haven apartment, one of whom disclosed that she had observed a black woman placing bags into the trunk of a red Toyota. Amato concluded that Vaughn was the woman and that the car belonged to Young. Later that morning, Amato and the others, including the defendant, took Bailey and Vaughn to the front door of Young's apartment. The defendant was armed with a pistol. An altercation took place after the door was opened. Two people from inside the apartment were shot and killed by Amato. Bailey was also shot. The men neither entered the apartment nor retrieved the three and one-half pounds of cocaine that was later found there.

The defendant was convicted on his plea of guilty to the crime of attempted robbery in the first degree.[5]

---

[5] The defendant was sentenced to a term of ten years to run consecutive to a sentence that the defendant was then serving.

Prior to sentencing, the defendant's counsel argued during a hearing on a motion to withdraw his plea that there had not been substantial compliance with Practice Book § 711 (1).[6] The defendant argued that the trial court had failed to include the definition of robbery when it addressed him. Specifically, the court failed to include, as part of that definition, the use or threat of the immediate use of force on another.[7] In denying the defendant's motion, the trial court acknowledged that it had not referred to robbery as larceny by force. It had indicated when addressing the defendant, however, that robbery in the first degree occurs when, in the course of the commission of the crime of robbery, "someone is armed with a deadly weapon." The court opined that this implies that some force was used, thereby distinguishing robbery in the first degree from a mere larceny. The court also noted that the state's recitation of the factual background of the crime was sufficient to notify the defendant of the crime charged.

On appeal, the defendant claims that the trial court incorrectly failed to apprise him of an essential element of the crime charged. The defendant claims that the trial court, by accepting the guilty plea, failed in its con-

---

[6] Practice Book § 711 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands: (1) The nature of the charge to which the plea is offered . . . ."

[7] The transcript of the trial court proceeding reveals the following colloquy:

"The Court: Now a robbery is a larceny. Taking someone else's property without their permission with the intent to permanently deprive the person of that property and in the course of the commission of said robbery, someone is armed with a deadly weapon. Do you understand that Mr. Wideman?

"The Defendant: Yes, sir.

"The Court: Okay. And . . . a deadly weapon is defined as follows. Any weapon whether loaded or unloaded from which a shot may be discharged or a switch blade knife . . . . So if a robbery is going to be committed and one of the participants has a deadly weapon, it's a robbery one, subsection two."

stitutional obligation and in its obligation under Practice Book § 711. We are not persuaded.

"It is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable." *State* v. *Ramos*, 23 Conn. App. 1, 3, 579 A.2d 560 (1990). A plea of guilty cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. *State* v. *Collins*, 176 Conn. 7, 9, 404 A.2d 871 (1978). These principles are in accord with Practice Book § 711 (1) et seq.[8]

"The fact that an allegation of noncompliance with [a rule of practice] may sometimes have constitutional dimensions does not . . . establish the existence of such a constitutional nexus in every case." *State* v. *Jarrett*, 218 Conn. 766, 776, 591 A.2d 1225 (1991). Precise compliance with the provisions of Practice Book §§ 711 and 712, which govern the canvassing of a defendant's guilty pleas, is not constitutionally required. *State* v. *Badgett*, 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). Our Supreme Court has indicated that "[w]here there has been a substantial compliance with [§ 711], such that none of the defendant's constitutionally protected rights has been infringed upon, the failure to comply with each and every requirement of [§ 711] does not automatically require the vacating of the defendant's plea. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Lopez*, 197 Conn. 337, 346, 497 A.2d 390 (1985). Moreover, due process does not mandate a factual basis inquiry. *Paulsen* v. *Manson*, 203 Conn. 484, 491, 525 A.2d 1315 (1987). The *Paulsen* court quoted approvingly from *Willbright* v. *Smith*, 745 F.2d 779, 780 (2d Cir. 1984), in which the court stated that "[t]he voluntariness of a plea of guilty

[8] See footnote 6.

. . . should be determined by considering all of the relevant circumstances.''

We must consider all of the relevant circumstances to determine whether the defendant had a full understanding of the nature of the charge to which he was entering a plea. For that plea to have been knowing and intelligent, the record must show that constitutional standards were satisfied and that there was substantial compliance with Practice Book § 711. *State* v. *Gilnite*, 202 Conn. 369, 383, 521 A.2d 547 (1987).

It is the duty of the trial court to comply with the provisions of Practice Book § 711. *State* v. *Elijah*, 34 Conn. App. 595, 597, 642 A.2d 735, cert. denied, 231 Conn. 907, 648 A.2d 157 (1994). Substantial compliance with Practice Book § 711 does not require that the trial court read the statute to the defendant if there are other reasons to believe that the defendant understands the statute. *State* v. *Badgett*, 220 Conn. 6, 14, 595 A.2d 851 (1991). The court could reasonably have concluded that the defendant understood the statute on the bases of what the court had informed him and the factual recitation of the nature of the crime placed in the record.[9] The court informed the defendant, in part, that ''in the commission of said robbery, someone is armed with a deadly weapon'' and that ''if a robbery is going to be committed and one of the participants had a deadly weapon, it's a robbery one, subsection two.'' While this does not specifically inform the defendant that § 53a-133 requires the use of physical force on another or the threatened immediate use of physical force on another, the concept of being armed with a deadly weapon, by its very nature, was sufficient to convey to the defendant that the crime of robbery in the first

---

[9] The state concedes, and we agree, that the record does not support a presumption that defense counsel explained the elements of the crime to the defendant. See *State* v. *Childree*, 189 Conn. 114, 123, 454 A.2d 1274 (1983).

degree included the use or threatened use of physical force on another. Also, the state's recitation of the underlying facts, in the defendant's presence, conveyed to the defendant the nature of the crime. The state's recitation explicitly described a scenario in which several men, including the defendant, who was armed with a pistol, went to an apartment to retrieve drugs. One of the men shot and killed two occupants of the apartment. This recitation provided the defendant with "real notice" of the nature of the crime. See *State* v. *Eason,* 192 Conn. 37, 43, 470 A.2d 688 (1984).

The defendant asks that we consider our Supreme Court's decision in *State* v. *Childree,* 189 Conn. 114, 454 A.2d 1274 (1983), as determinative that the court's omission was not inconsequential in that it was a failure to apprise the defendant of an element critical to the offense. In *Childree,* the defendant claimed that the trial court failed to apprise him of an element critical to the offense of first degree larceny, i.e., a threat of physical injury to some person in the future. Id., 118. After a comparison of the trial court's definition of first degree larceny with the statutory definition, the court concluded that the critical element of "future harm" was not made clear to the defendant. As stated earlier, we conclude that, in this case, the critical elements of the crime of robbery in the first degree were conveyed to the defendant.

We conclude, on the basis of our review of the record, that the defendant understood the nature of the crime and was aware of the elements of the crime of attempted robbery in the first degree.

The judgment is affirmed.

In this opinion the other judges concurred.